**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **962 SHERMAN AVE, LLC,** | |
|        **Plaintiff,** | |
| **v.** | |
| **FRANCISCO MEJIA,** | Civ. No. 19-9208 (KM) (JBC) |
|        **Defendant/Third-Party Plaintiff,** | **OPINION** |
| **v.** | |
| **SHERMAN AVENUE CONDOMINIUM ASSOCIATION,** | |
|        **Third-Party Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

       This matter comes before the Court on the motion (DE 87) of Third-Party Defendant Sherman Avenue Condominium Association to dismiss Francisco Mejia's Third-Party Complaint. For the following reasons, the motion is **granted**.

I.     **Background**[1]

In April 2019, plaintiff 962 Sherman Ave, LLC ("962 Sherman") filed a complaint against Francisco Mejia. (DE 1.) According to the complaint, Mejia owned three units in a two-story commercial condominium in Elizabeth, New Jersey. (Compl. at ¶¶ 7, 8, 10.) On March 12, 2015, there was a fire at the building, originating from one of the units owned by Mejia. (Compl. at ¶ 50.) At the time of the fire, 962 Sherman owned 80% of the units in the building, and it alleges that it was required to pay special assessments as a result of the fire damage. (Compl. at ¶ 54.) 962 Sherman's complaint asserts claims of negligence, breach of contract, and unjust enrichment against Mejia.

In October 2019, Mejia filed an Answer and Third-Party Complaint against Sherman Avenue Condominium Association ("SACA"). (DE 23.) The Third-Party Complaint alleges that SACA managed the units Mejia owned and that all maintenance, repairs and replacement to the common elements of the building were SACA's responsibility. In particular, Mejia alleges that Ari Schwartz, the manager of SACA, failed to take action on the "rotted" sprinkler system in the building. (TPC at ¶ 79.)

SACA now moves to dismiss Mejia's Third-Party Complaint on the basis that Mejia's claim is barred by a previous settlement agreement signed July 3, 2018, in conjunction with the New Jersey Superior Court matter *Keith*

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

|  |  |  |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Compl." | = | Complaint (DE 1) |
| "TPC" | = | Mejia's Answer and Third-Party Complaint (DE 23) |
| "SACA Brf." | = | Memorandum of Law in Support of SACA's Motion to Dismiss (DE 87) |
| "Mejia Brf." | = | Memorandum of Law in Opposition to SACA's Motion to Dismiss (DE 88) |
| "SACA Reply Brf." | = | Reply in Support of SACA's Motion to Dismiss (DE 91) |

*Upholstery v. Francisco Mejia et al.*, UNN-L-3433-16 (the "Settlement Agreement").

## II.   Standard of Review

A motion to dismiss a counterclaim or third-party claim is analyzed under the same standards as an ordinary Rule 12(b)(6) motion to dismiss a complaint. *Bank of Hope v. Chon*, Civ. No. 14-1770, 2017 WL 39554, at *2 (D.N.J. Jan. 4, 2017) (collecting cases); *see generally* Fed. R. Civ. P. 12(b)(6) (providing for dismissal for failure to state a "claim").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are

accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record, including prior judicial proceedings. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311, 311-12 (3d Cir. 1967) (considering previous litigation referred to in complaint); *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiffs claim). Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document ... the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III.   Discussion

Under New Jersey law, "[a]n agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Brundage v. Estate of Carambio*, 195 N.J. 575, 601, 951 A.2d 947 (2008) (quoting *Pascarella v. Bruck*, 190 N.J. Super.

4

118, 124, 462 A.2d 186, 190 (App. Div. 1983). A settlement agreement "should be construed consistently with fundamental precepts of contract construction." *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 318 (3d Cir. 1990). "The agreement memorializes the bargained for positions of the parties and should be strictly construed to preserve those bargained for positions." *Id.* at 319. "[T]he meaning of a settlement agreement should initially be discerned by looking to the four corners of the agreement itself. An agreement is unambiguous when it is reasonably capable of only one construction." *Marwood v. Elizabeth Forward Sch. Dist.*, 93 Fed. Appx. 333, 336 (3d Cir. 2004) (citation omitted). Similarly, "a release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." *Domanske v. Rapid-Am. Corp.*, 330 N.J. Super. 241, 246, 749 A.2d 399 (App. Div. 2000). "[W]hen reading a contract, our goal is to discover the intention of the parties." *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 115-16, 892 A.2d 646 (2006) (quoting *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282, 633 A.2d 531 (1993)). In determining the parties' intent, the court considers "the contractual terms, the surrounding circumstances, and the purpose of the contract." *Id.* "Generally, the terms of an agreement are to be given their plain and ordinary meaning." *M.J. Paquet, Inc. v. N.J. DOT*, 171 N.J. 378, 396, 794 A.2d 141 (2002).

SACA has designated the 2018 Settlement Agreement as Exhibit A of its brief in support of the motion to dismiss and provided it to the Court under confidential cover. The accompanying Release executed the same day is attached to SACA's brief as Exhibit B. The parties do not dispute the authenticity validity of the agreements. The Settlement Agreement states that New Jersey law governs the agreement (Agreement at ¶ 15), and neither party disputes that New Jersey law applies.

The Settlement Agreement's second unnumbered paragraph provides the following:

This SETTLEMENT AGREEMENT constitutes the full, fair and final settlement of all claims, disputes, and rights, including attorneys' fees and costs that were, may have been or could be asserted by FRANCISCO MEJIA against SACA from the beginning of time until the date of this SETTLEMENT AGREEMENT.

Paragraph 6 goes on to state that Mejia "agrees not to file or institute any lawsuit, charges, or other claims for relief of any nature whatsoever against SACA . . . in any forum of any kind at any time and [Mejia] shall not seek discovery from SACA . . . based upon any events, whether known or unknown, occurring prior to the date of the execution of this SETTLEMENT AGREEMENT."

The accompanying Release provides that Mejia releases "any and all claims" against SACA "regarding, related to, or arising out of the fire that took place on March 12, 2015 at 960-962 Sherman Avenue, Elizabeth, New Jersey, including all claims, known or unknown, including all claims which were asserted or could have been asserted in the lawsuit [docketed at UNN-L-3433-16]." (Ex. B, ¶ 1.)

Mejia argues that the 2018 Settlement Agreement bars only claims that existed prior to the date of the settlement agreement. Mejia points to the language stating that the agreement constitutes the settlement of all claims, "that were, may have been or could be asserted" by Mejia against SACA "from the beginning of time until the date of this SETTLEMENT AGREEMENT." Based on this language, Mejia argues that claims arising after July 3, 2018, the date the agreement was executed, are not barred.

The Release does not include the same explicit time limitation, but it does not explicitly allow future claims, either. (Ex. B.) The Release refers to the Settlement Agreement, beginning by stating that "[f]or in and in consideration of certain agreed upon settlement payments to be made by the fully settled defendant [SACA], more specifically described in the companion Settlement Agreement . . . executed simultaneously herewith and incorporated herewith . . .

6

. [Mejia] agrees to the following in the full and permanent settlement of all claims of any kind arising from the [2015 fire]." (Ex. B.)

I agree that based on the plain language of the Settlement Agreement, Mejia may be able to bring claims which *arose* after July 3, 2018, even if they *relate* to the 2015 fire.[2] *See, e.g.*, *Caivano v. Production Workers Union Local 148 Welfare Fund*, Civ. No. 18-1908, 2018 WL 7858655 (D.N.J. Nov. 21, 2018) (holding that a release which covered all claims "from the beginning of the world to the date of this Agreement" covered only claims that had accrued, or at least were known, as of the agreement date). At the very least, there is a potential ambiguity between the language of the Settlement Agreement and the language of the Release which cannot be resolved on a motion to dismiss. *See Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F. Supp. 525, 531 (D.N.J. 1989), *aff'd*, 899 F.2d 1218 (3d Cir. 1990) ("The interpretation of ambiguous terms in a contract is generally a question of fact.") However, claims that arose prior to the agreement, even if discovered later, would be barred by both agreements' reference to all claims "known or unknown." (Ex. A, ¶ 3; Ex. B, ¶ 1.)

The application of the release is made more difficult by Mejia's failure to specify precisely what claims he is asserting. In his brief, Mejia argues that SACA did not have fire insurance in place, which was "never revealed by SACA." (Mejia Brf. at 3-4.) However, a claim that SACA lacked fire insurance would surely have existed at the time the Settlement Agreement was executed. Even if that information was "never revealed," such a claim would be barred by the Settlement Agreement, in which Mejia undertook to release all claims, whether known or unknown, as of the date of that agreement. Mejia also argues in his brief that SACA levied undue special assessments after the

---

[2]     SACA does not directly address Mejia's argument that claims which *arose* after the Settlement Agreement was executed are not barred. Instead, SACA seems to take Mejia to be arguing that claims are not barred as long as they are *asserted* after the execution date of the agreement. That does not appear to be the argument Mejia is making. The result is that I am left without the benefit of SACA's opposition to Mejia's actual argument.

execution date of the Settlement Agreement. Claims based on those special assessments, Mejia argues, did not arise until 2018, when "SACA conducted fraudulent meetings after it became a fully settled party under the Settlement Agreement and then proceeded to pass fraudulent special assessments." (Mejia Brf. at 5.) A claim based on fraud that occurred after the Settlement Agreement was executed, even if it relates to the 2015 fire, may not be barred by the language of the Settlement Agreement.

All of the foregoing arguments, however, appear only in briefs; nothing to that effect is alleged in Mejia's Third Party-Complaint. The Third-Party Complaint includes some dates, but none more recent than 2015: Mejia alleges that a sales consultant proposed to replace sprinkler heads at SACA in 2013 (TPC ¶ 73); he includes testimony from a sprinkler fitter assigned to SACA from "2013 through 2015" (TPC ¶ 78); and he refers to the fire that occurred in 2015 (TPC ¶ 68). There is no mention of insurance or special assessments. All the allegations seem to relate to SACA's alleged failure to prevent or mitigate the fire via sprinkler systems and pre-fire inspections. These failures necessarily would have occurred prior to the fire, which of course took place before the execution of the Settlement Agreement. Any claims based on pre-fire failures are barred by the plain language of the Settlement Agreement.

Because it appears that the allegations in Mejia's Third-Party Complaint occurred prior to the execution of the 2018 Settlement Agreement, I will dismiss the Third-Party Complaint. I do not hold, however, that the 2018 Settlement Agreement necessarily bars *all* claims relating to the 2015 fire. But such claims must be alleged.[3] Mejia's briefing suggests that he may have a basis to assert claims which may not be time-barred, so amendment would not

---

[3]     The parties note that there are related cases pending in state court. The Honorable Mark P. Ciarrocca of the Superior Court of New Jersey, Law Division ruled orally that certain claims were barred by the parties' Settlement Agreement. (Ex. C.) However, in that case, it appears that Mejia argued that the Settlement Agreement had been rescinded, not that the claims arose after the Agreement was executed. (Ex. C at 16-17.) Neither party appears to argue that the state court's decision precludes the claims or issues in this federal action.

8

be futile. I therefore grant SACA's motion without prejudice to the filing of an amended Third-Party Complaint. With the benefit of the discussion above, the parties may bring the issues surrounding the scope of the Settlement Agreement into sharper focus.

## IV. Conclusion

SACA's motion to dismiss (DE 87) is granted based on Mejia's failure to allege that Mejia's claims arose after the date the 2018 Settlement Agreement was executed. That dismissal is entered without prejudice to the filing of a proposed amended third-party complaint within 30 days.

An appropriate order follows.

Dated: September 29, 2021

/s/ Kevin McNulty

_____

Kevin McNulty
United States District Judge